# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BRENDA CUNNINGHAM, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-00585 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 10 |
| | : | | |
| CAROLYN W. COLVIN, | : | | |
| Acting Commissioner of Social Security, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR JUDGMENT OF REVERSAL; AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF AFFIRMANCE

## I. INTRODUCTION

Plaintiff Brenda Cunningham commenced this action pursuant to 42 U.S.C. § 405(g) against Defendant, the Acting Commissioner of the Social Security Administration ("SSA"), seeking review of the SSA Commissioner's denial of her claims for disability insurance benefits and Supplemental Security Income payments under sections 216(I), 223, and 1611 of the Social Security Act. *See* 42 U.S.C. §§ 416(I), 423, 1382. Upon consideration of the motions, the memoranda in support thereof and opposition thereto, and the administrative record, the Court will deny Plaintiff's Motion for Judgment of Reversal and grant Defendant's Motion for Judgment of Affirmance.

## II. STATUTORY FRAMEWORK

The Social Security Act establishes a program for providing "disability insurance benefits" to eligible individuals and "supplemental security income to individuals who have attained age 65 or are blind or disabled." *See* 42 U.S.C. §§ 423, 1381, 1381a. The statute

defines disability for non-blind individuals as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id*. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905. A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A disabled individual is eligible for Supplemental Security Income payments if he meets additional statutory requirements concerning "income" and "resources." *Id*. § 1382(a)(1).

Within the Social Security Act framework, an Administrative Law Judge ("ALJ") must conduct a five-step sequential evaluation to assess a claimant's alleged disability. *See generally* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must find that the claimant is not presently engaged in "substantial gainful" work. *See id.* §§ 404.1520(b), 416.920(b). Second, the ALJ must find that the claimant has a "severe impairment" that "significantly limits" his ability to do basic work activities. *Id*. §§ 404.1520(c), 416.920(c). Third, if the ALJ finds that the claimant suffers from an impairment that meets one of those listed in 20 C.F.R. § 404, Subpart P, Appendix 1, the claimant is deemed disabled and the inquiry ends. *See id*. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment does not meet one of those listed in the Appendix, the ALJ must determine the claimant's residual functional capacity based on all evidence in the record. *See id*. §§ 404.1520(e), 416.920(e).

At step four, after making a determination of the claimant's residual functional capacity, the ALJ must determine whether the claimant's capabilities allow him to perform "past relevant

work." *Id*. §§ 404.1520(f), 416.920(f). If the claimant's residual functional capacity does not allow him to perform past relevant work, the ALJ moves to step five, during which the ALJ determines whether the claimant's residual functional capacity allows him to adjust to any other work, given his age, education, and work experience. *See id*. §§ 404.1520(g), 416.920(g). If the ALJ finds that the claimant can either perform past relevant work (at step four) or adjust to any other work (at step five), the ALJ will conclude that the claimant is not disabled. *See id*. The claimant bears the burden of proof during the first four steps, but the burden shifts to the SSA Commissioner at step five. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

## III. BACKGROUND

At the time of the administrative decision, Plaintiff was a 37 year-old woman who resided in Washington, DC. *See* Administrative Record ("AR"), Sept. 4, 2013, ECF No. 7, at 21, 32, 173-74. She has a 10th grade education and no additional training. *See id*. at 266. Her past work included employment as a cashier, bank teller, and copy clerk. *See id.* at 45. Plaintiff filed applications for disability insurance benefits and Supplemental Security Income payments pursuant to Titles II and XVI of the Social Security Act on June 17, 2009, and alleged disability on the basis of major depressive disorder and carpal tunnel syndrome. *See id.* at 11, 173-74, 180-86. Plaintiff's claims were denied initially and again upon reconsideration. *See id.* at 66-69, 72. Plaintiff requested a hearing before an ALJ, *see id.* at 80, and the hearing was held on November 7, 2011, during which Plaintiff and a vocational expert testified. *See id.* at 29-49.

The ALJ issued a decision on February 22, 2012, finding that Plaintiff was not entitled to disability insurance benefits or Supplemental Security Income payments. *See* AR at 23. At step one of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 1, 2009. *See id.* at 13. At step two, the ALJ

3

found that Plaintiff's carpal tunnel syndrome, depression, and bipolar disorder were severe impairments. *See id.* The ALJ also stated, however, that "these impairments did not cause significant limitations in the claimant's ability to perform basic work activities during the period at issue." *Id.* The ALJ found at step three that Plaintiff's impairments did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, including the criteria for mental impairments in listing 12.04. *See id.* at 14. The ALJ also found that Plaintiff has "moderate restriction" in "activities of daily life," as she "takes her medications, bathes and grooms herself, runs errands, shops for groceries, performs household tasks/cleaning, use[s] public transportation, manage[s] her finances, and attends her appointments." *Id.*

At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, but that she should not climb ladders, ropes, or scaffolds. *See* AR at 15. The ALJ also found that Plaintiff should avoid exposure to hazardous conditions, such as operating machinery and unprotected heights, and that she must avoid constant handling and repetitive fine manipulation with her upper extremities. *See id.* at 15, 20. In addition, the ALJ determined that Plaintiff has moderate difficulties in daily activities; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence, or pace, which limited her to performing unskilled tasks involving no more than occasional contact with coworkers, supervisors, or the public. *See id.* at 15.

Next, the ALJ determined through the testimony of a vocational expert that Plaintiff was unable to perform her past relevant work as a copy clerk because the job requirements exceeded her residual functional capacity. *See id.* at 21. After further questioning of the expert, the ALJ found that Plaintiff could perform light, unskilled jobs, such as a silverware wrapper or garment presser, that exist in significant numbers in the national economy. *See id.* at 22. The expert

4

testified that these jobs require more than occasional handling, which the ALJ determined Plaintiff was capable of performing because medical evidence showed that her carpel tunnel syndrome was not as severe as she alleged. *Id.* Consequently, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. *See id.* at 23; 42 U.S.C. §§ 416, 423. The ALJ also concluded that Plaintiff did not qualify for Supplemental Security Income payments under section 1614(a)(3)(A) of the Social Security Act. *See* AR at 23; 42 U.S.C. § 1382(c).

Following the ALJ's determination, Plaintiff requested that the Appeals Council review the ALJ's decision. *See* AR at 6-7. The Appeals Council denied Plaintiff's request for review on February 21, 2013, thus making the ALJ's decision the final decision of the SSA Commissioner. *See id.* at 1-3. Plaintiff has fully exhausted her administrative remedies, and the claims before this Court are ripe for judicial review.

### IV. CONTENTIONS OF THE PARTIES

Pursuant to 42 U.S.C. § 405(g), Plaintiff contends that the ALJ's decision is not supported by substantial evidence in the record and is erroneous as a matter of law. *See* Pl.'s Mem. in Supp. of Mot. J. Affirm. ("Pl.'s Mem."), Dec. 12, 2013, ECF No. 9-1, at 1. Thus, Plaintiff requests that the Court reverse the agency's decision or, in the alternative, issue an order remanding the case to the SSA Commissioner for a new administrative hearing. *Id.* Specifically, Plaintiff asserts that the ALJ committed two errors when performing the sequential evaluation: (1) the ALJ erroneously assessed Plaintiff's residual functional capacity; and (2) the ALJ erroneously relied on the testimony of the vocational expert. *See id.* at 3, 9. Within each claim of error, Plaintiff puts forth several arguments for why the Court should grant the requested relief.

Regarding Plaintiff's first claim, she asserts that, through several errors, the ALJ failed to properly evaluate pertinent evidence and mischaracterized other evidence when assessing her residual functional capacity, as outlined in Social Security Ruling 96-8p. *Id.* at 9; *see generally* Social Security Ruling 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 (S.S.A. July 2, 1996) ("SSR 96-8p"). First, Plaintiff argues that although the ALJ noted that he was giving substantial weight to the opinion of Dr. Chari, who reported that Plaintiff should avoid repetitive motion of the wrists, *see* AR at 17-18, the ALJ did not include that limitation in his residual functional capacity assessment. *See* Pl.'s Mem., ECF No. 9-1, at 5-6. Instead, the ALJ found that Plaintiff needed to avoid "constant handling and repetitive fine manipulation with the upper extremities." AR at 15. Second, Plaintiff argues that the ALJ failed to explain how her limitations of lifting no more than five pounds and avoiding repetitive lifting were addressed in the functional capacity assessment. *See* Pl.'s Mem., ECF No. 9-1, at 6. Third, Plaintiff argues that the ALJ mischaracterized the reports from Dr. Phillips and Dr. Meyer regarding her ability to perform light duty work. *See id.* at 7. In particular, Plaintiff suggests that the ALJ wrongly relied on the doctors' use of the term "light duty" to support the residual functional capacity assessment that Plaintiff was capable of "light work." *Id.* at 7-8. And finally, Plaintiff argues that the ALJ failed to properly evaluate her psychiatric impairments by not including appropriate mental limitations within the residual functional capacity assessment. *See id.* at 8-9.

Regarding Plaintiff's second claim of error, she alleges that the ALJ erred by failing to include in his hypothetical question to the vocational expert during step five of the sequential evaluation Plaintiff's limitations on constantly handling objects, repetitively using her hands and wrists, repetitively lifting, and lifting no more than five pounds. *See id.* at 9-10. Relatedly,

Plaintiff also claims that the ALJ failed to include in his hypothetical question any limitation on handling objects, despite putting a limitation on "constant handling" in the residual functional capacity assessment. *See id.* at 10. As a result of these alleged errors, Plaintiff claims that the vocational expert's responses to the ALJ's hypothetical question do not constitute substantial evidence. *See id.*

Defendant, in support of her motion and in opposition to Plaintiff's motion, maintains that the ALJ's decision was supported by substantial evidence in the record.[1] *See* Def.'s Mem. in Supp. Mot. J. Plead. ("Def.'s Mem."), Jan. 27, 2014, ECF No. 10-1, at 7. In response to Plaintiff's first claim of error, Defendant argues that there are no inconsistencies between the cited medical opinions and the ALJ's residual functional capacity analysis regarding Plaintiff's handling and upper-extremity manipulation limitations. *Id.* at 8. Further, Defendant argues that the ALJ clarified later in his decision that Plaintiff "cannot perform constant fine manipulation," AR at 20, which is fully consistent with the opinions of Dr. Chari, Dr. Phillips, Dr. Pinder, and Dr. McMorris. *See* Def.'s Mem., ECF No. 10-1, at 8. Defendant also argues that even if Dr. Phillips and Dr. Meyer did not intend to equate "light duty" with "light work" as the term is used specifically in the SSA regulations, the ALJ's finding that Plaintiff can perform light work is supported by the opinions of Dr. Pinder and Dr. McMorris, which constitutes substantial evidence. *See id.* at 10; AR at 420, 429. Finally, Defendant argues that section I of the mental functional assessment form in which Dr. Cott described Plaintiff as having certain psychiatric impairments was just a starting point for assessing which areas of functioning may be affected

---

[1] Defendant filed a memorandum in support of her motion for judgment of affirmance, *see* ECF No. 10-1, and a memorandum in opposition to Plaintiff's motion for judgment of reversal, *see* ECF No. 11. Because both memoranda are identical in substance, the Court only addresses the arguments in the memorandum in support of the motion for judgment of affirmance.

for Plaintiff, as a physician only makes the final functional capacity determination in section III of the form. *See* Def.'s Mem., ECF No. 10-1, at 10-11. As such, the ALJ was correct not to include in the assessment or present to the vocational expert the moderate limitations Dr. Cott noted in section I of the form. *See id*. at 11; AR at 406-07.

In response to Plaintiff's second claim of error, Defendant acknowledges that the ALJ did not include a specific limitation on handling in his hypothetical question to the vocational expert, but Defendant argues that this omission is irrelevant because implicit in the ALJ's residual functional capacity assessment to avoid constant handling is the finding that Plaintiff can perform frequent handling, as the vocational expert's proposed occupations required. *See* Def.'s Mem., ECF No. 10-1, at 12. Defendant also argues that no medical source specified that Plaintiff was limited to only occasional handling or fingering as her maximum manipulative abilities. *See id*. Accordingly, the ALJ's purported failure to instruct the vocational expert on those alleged limitations was not an error. *See id*.

## V. STANDARD OF REVIEW

A claimant may seek judicial review in a United States district court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party[.]" 42 U.S.C. § 405(g). "The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "A court reviewing a case for substantial evidence gives considerable deference to the decision rendered by the ALJ and ensures his decision is in accordance with applicable law." *Beynum v. Barnhart*, 435 F. Supp. 2d 142, 144 (D.D.C. 2006)

8

(citations omitted). Nevertheless, "the court must carefully scrutinize the entire record, but may not reweigh the evidence and replace the [SSA Commissioner's] judgment regarding the weight of the evidence with its own." *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005) (citation and quotation omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id*. (citation and quotation omitted). The U.S. Court of Appeals for the District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (citation omitted); *see also Nicholson v. Soc. Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C. 2012) (noting that the inquiry during judicial review "examines whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits" (citation and quotation omitted)); *Little v. Colvin*, No. 12-568, 2013 WL 6152065, at *3 (D.D.C. Nov. 22, 2013) (noting that "the court is not to review the case de novo or reweigh the evidence" (citation and quotation omitted)). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted).

## VI. ANALYSIS

For the reasons discussed below, the Court finds that the ALJ's determinations were supported by substantial evidence and were made in accordance with the applicable law.

Accordingly, the Court will deny Plaintiff's Motion for Judgment of Reversal and grant Defendant's Motion for Judgment of Affirmance.

## A. Whether The ALJ Erroneously Assessed Plaintiff's Residual Functional Capacity

To make a determination under steps four and five of the disability analysis, which involve an inquiry into the claimant's ability to return to past work and an assessment of whether future employment of any variety is possible, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ must engage in a residual functional capacity analysis. *See id.* §§ 404.1545, 416.945; SSR 96-8p at *2. Plaintiff argues that the ALJ committed several errors when performing this analysis, each of which the Court will address below. Before reaching the merits of Plaintiff's claim, however, some background on the SSA regulations is necessary.

When performing the residual functional capacity assessment, SSR 96-8p requires that the ALJ assess the claimant's ability to perform sustained "work-related physical and mental activities," SSR 96-8p at *2, by examining his exertional and non-exertional capacities, such as sitting, walking, hearing, and tolerance for temperature extremes. *Id*. at *5-6. Further, under SSR 96-8p the ALJ is required to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e*., 8 hours a day for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id*. at *7; *see also Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006). The ALJ's "narrative discussion" of the residual functional capacity must

> contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;… a resolution of any inconsistencies in the evidence as a whole; and … a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

SSR 96-8p at *7. "Stated another way, SSR 96-8p requires that the ALJ must build a 'logical bridge' from the evidence to his conclusion." *Banks v. Asture*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (quoting *Lane-Rauth*, 437 F. Supp. 2d at 67).

Turning to the present case, Plaintiff first argues that although the ALJ expressed that he was giving substantial weight to the opinion of Dr. Chari, he did not include in his residual functional capacity assessment a limitation that Plaintiff must avoid repetitive handling or motion of the wrists, as Dr. Chari recommended. *See* Pl.'s Mem., ECF No. 9-1, at 5-6. To support this claim, Plaintiff suggests that the ALJ's finding that she must avoid "constant handling and repetitive fine manipulation with the upper extremities" is inconsistent with Dr. Chari's assessment. *Id.* at 6; AR at 17-18. Contrary to Plaintiff's suggestion, however, there is little room, if any, between the ALJ's conclusion and Dr. Chari's recommendation. The ALJ's finding therefore is not inconsistent with Dr. Chari's recommendation, and that finding also is supported by other, substantial evidence in the administrative record, including the opinions of Dr. Phillips and Dr. Pinder regarding the limitations on Plaintiff's use of her upper extremities. *See*, *e.g.*, AR at 18-20 (explaining that Dr. Phillips opined that "claimant could return to light duty work despite her symptoms of bilateral carpel tunnel syndrome," and Dr. Pinder opined that "claimant is limited in fine manipulation" of her upper extremities due to her carpel tunnel syndrome).

Plaintiff next argues that the ALJ failed to address limitations stated in two Health Status Certificates dated November 26, 2007, and January 4, 2008, about her not lifting more than five pounds and avoiding repetitive lifting. *See* Pl.'s Mem., ECF No. 9-1, at 6. As Defendant points out, however, both of these limitations were temporary, not ongoing conclusions about Plaintiff's capabilities. *See* Def.'s Mem., ECF No. 10-1, at 9-10. The November 2007 limitation to

constrain typing and lifting to thirty minutes at a time was only imposed for six weeks and took place before Plaintiff's alleged onset date of May 2009. *See* AR at 534-35. Similarly, the January 2008 health status report limiting Plaintiff to light duty with no lifting over five pounds was in effect for only eleven days — until January 15, 2008 — and thus also was before Plaintiff's alleged onset date. *See id*. at 546. Accordingly, the ALJ did not implicitly reject or ignore this evidence; instead, it appears that the ALJ considered the certifications for what they were — short-term work limitations — and found that this evidence did not require additional work limitations because it already was consistent with other medical opinions on record, which, taken together, demonstrated only that Plaintiff should "avoid constant handing and repetitive fine manipulation with the upper extremities." *Id*. at 18.

In addition, Plaintiff argues that the ALJ mischaracterized the evidence from Dr. Phillips and Dr. Meyer by relying on their use of the term "light duty" to support the residual functional capacity assessment for "light work." *See* Pl.'s Mem., ECF No. 9-1, at 7-8. This argument is without merit. As the record shows, the ALJ made his finding that Plaintiff is capable of "light work" after considering all relevant evidence, including the "state agency consultant's findings, the claimant's activities of daily living, and the medical record and other evidence of record." AR at 21. Nothing in the ALJ's report suggests that he conflated the doctors' use of the term "light duty" with the SSA definition of "light work," and the Court will not read an ambiguity into the record when none exists. Furthermore, the ALJ's conclusion that Plaintiff can perform light work is consistent with the opinions of Dr. Pinder and Dr. McMorris, as well as those of Dr. Meyer and Dr. Phillips, and thus is supported by substantial evidence. *See*, *e.g*., *id*. at 420 (Dr. Esther Pinder, Physical Residual Functional Capacity Assessment, Sept. 24, 2009 (concluding that claimant "is capable of light work that does not involve repetitive fine manipulations")); *id*.

at 429 (Dr. Jacqueline McMorris, Case Analysis, Dec. 4, 2009 (stating that Plaintiff "was denied to light work on the initial level" and affirming that finding when "[o]n recon[sideration], there is no new evidence or treatment/worsening or change in physical impairment")); *see also id*. at 339 (Dr. Jeffrey Phillips, Progress Note, Feb. 13, 2008 (opining that Plaintiff "could go to light duty but is not to do any repetitive use of her hands")); *id.* at 341 (Dr. Richard Meyer, Progress Note, Mar. 21, 2008 (opining that Plaintiff "remains fit for only light duty" work)).

Furthermore, the ALJ correctly explained that Dr. Phillips stated in his February 13, 2008, progress notes that "the claimant could return to light duty work despite her symptoms of bilateral carpel tunnel syndrome." *Id*. at 18 (citing AR at 339 (Dr. Jeffrey Phillips, Progress Note, Feb. 13, 2008)). The doctor also opined that Plaintiff "is not to do any repetitive use of her hands." AR at 339. Plaintiff has failed to explain how the ALJ's limitation that she "must avoid constant handling and repetitive fine manipulation with the upper extremities" is inconsistent with Dr. Phillips's statements. *Id*. at 15. Indeed, these limitations on Plaintiff's use of her upper extremities, which clearly includes her hands, are directly on point with Dr. Phillips's report.

The same is true for the ALJ's characterization of Dr. Meyer's report. The doctor referenced the Unity Health Care's limitation from January 4, 2008, of lifting no more than five pounds and typing for no more than thirty minutes. *See id*. at 331 (Dr. Richard Meyer, Orthopedic Consultation, Jan. 23, 2008). But, as was discussed above, the ALJ separately considered the Unity Health Care report in making the residual functional capacity assessment, *see id.* at 18 (discussing *id*. at 545-46 (Unity Health Care, Adult Progress Notes, Jan. 4, 2008)), and the fact that Dr. Meyer also separately acknowledged these limitations in his January 23, 2008, report hardly necessitated further discussion from the ALJ. As such, the ALJ did not mischaracterize Dr. Meyer's report when making the assessment.

Finally, Plaintiff argues that the ALJ failed to properly consider her psychiatric impairments by not including in the residual functional capacity assessment any limitations based on Dr. Cott's mental assessment report. *See* Pl.'s Mem., ECF No. 9-1, at 8-9. The ALJ, however, did consider Dr. Cott's assessment, including the areas in which Plaintiff is "moderately limited" and "not significantly limited." *See* AR at 19-20. The ALJ evaluated these findings in conjunction with other objective evidence in the record, including Plaintiff's ability to function in every-day life. *See id*. at 20. As Defendant points out, moreover, the assessments by Dr. Cott that Plaintiff cites were made within section I of the assessment form, which provides for only "summary conclusions." *Id*. at 406 (Dr. Patricia Cott, Mental Residual Functional Capacity Assessment, Sept. 8, 2009). In section III, which asks for the "functional capacity assessment," Dr. Cott stated only that Plaintiff "could return to routine work with sustained abstinence." *Id*. at 408.

Nevertheless, the ALJ clearly considered Dr. Cott's summary conclusions in the context of other objective evidence in the record, including the finding that Plaintiff functions independently in every-day life, to conclude that Plaintiff is limited by "moderate difficulties in social activities, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace, which limited her to performing only simple, routine, unskilled tasks not involving significant stress (no production line work) and no more than minimum contact with coworkers, supervisors, or the public." *Id*. at 15. The ALJ's conclusion therefore is consistent with the record and supported by substantial evidence, including Dr. Cott's evaluation. *See*, *e.g*., *id*. at 402 (Dr. Patricia Cott, Psychiatric Review Technique, Sept. 8, 2009 (finding a "moderate" degree of limitation for "restrictions on activities in daily living";

"difficulties in maintaining social functioning"; and "difficulties in maintaining concentration, persistence or pace")).

For these reasons, the Court finds that the ALJ "buil[t] a logical bridge from the evidence to his conclusion," by thoroughly evaluating the evidence, explaining which evidence was persuasive and supported by the record, and comparing the objective medical evidence to Plaintiff's subjective testimony. *Banks v. Asture*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (citation and quotation omitted). The Court has "carefully scrutinize[d] the entire record," but it will not — and cannot — "reweigh the evidence and replace the [SSA Commissioner's] judgment regarding the weight of the evidence with its own," which is what Plaintiff seeks. *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005). Instead, the Court's review of the record shows that the findings and analysis in the ALJ's residual functional assessment involved a sufficient discussion of the relevant evidence, including which was credited and which was rejected (such as Plaintiff's testimony), as SSR 96-8p mandates. *See Hartline v. Astrue*, 605 F. Supp. 2d 194, 204 (D.D.C. 2009) (granting the defendant's motion for judgment of affirmance when "the ALJ performed a sufficient function-by-function assessment of Plaintiff's exertional and non-exertional abilities as well as sufficient narrative in support thereof"). Accordingly, the ALJ applied the correct legal standard, and the decision was supported by substantial evidence. *Contra Cobb v. Astrue*, 770 F. Supp. 2d 165, 173 (D.D.C. 2011) (reversing and remanding when "[i]n addition to providing an inadequate rationale for his conclusion [in the residual functional capacity analysis], the wording of the ALJ's decision [was] also too generic to enable the Court to determine what evidence was credited and what evidence was rejected").

## B. Whether The ALJ Erroneously Relied On The Testimony Of The Vocational Expert

Plaintiff argues that the ALJ improperly relied upon the testimony of the vocational expert to determine whether Plaintiff is disabled. *See* Pl.'s Mem., ECF No. 9-1, at 9. Specifically, Plaintiff alleges that the ALJ failed to include in his hypothetical question to the vocational expert any limitation on handling objects, despite putting such a limitation in the residual functional capacity assessment. *Id*. at 9-10. In addition, Plaintiff asserts that the ALJ's hypothetical question to the vocational expert was erroneous because of underlying deficiencies in the residual functional capacity assessment, including the absence of a limitation on Plaintiff's repetitive use of her hands and wrists, repetitive lifting, lifting of no more than five pounds, and mental impairment limitations. *Id*. at 10. Again, some background on the relevant guidelines is helpful before turning to the merits of Plaintiff's claim.

The SSA regulations provide that when determining if there are jobs that exist in significant numbers in the national economy that a claimant could perform based on her residual functional capacity, the ALJ may consider the testimony of a vocational expert. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Brown v. Barnhart*, 408 F. Supp. 2d 28, 33 n.5 (D.D.C. 2006) ("An administrative law judge may base his decision on the testimony of a vocational expert."). When "the ALJ looks to a vocational expert in assessing a claimant's ability to do other work, the ALJ must accurately describe the claimant's physical impairments in any question posed to the expert." *Butler v. Barnhart*, 353 F.3d 992, 1005 (D.C. Cir. 2004) (citation and quotation omitted). Thus, on appeal of the SSA Commissioner's decision, courts must "ensure that the hypothetical questions addressed to the vocational expert encompass[ed] all relevant impairments of the claimant," which may include "a description of the extent and duration of disabling physical impairments, a description of the claimant's actual condition, and

a description of his subjective impressions of the condition." *Sloan v. Astrue*, 538 F. Supp. 2d 152, 155 (D.D.C. 2008) (citation omitted). A proper hypothetical question allows "the vocational expert to accurately assess what jobs exist which the claimant has the capacity to perform." *Id*.

Plaintiff's claim that the ALJ wrongly failed to include in the hypothetical question a limitation on handling objects requires the Court to take a closer look at the ALJ's colloquy with the vocational expert. During the questioning, the ALJ first asked the expert to assume a person with Plaintiff's age, education, and work experience. *See* AR at 46. The ALJ then asked the expert to include the work-related mental and physical limitations from the functional capacity assessment, including that the person "should do no climbing of ropes, ladders or scaffolds"; should "avoid[] work[ing] around dangerous machinery or unprotected heights"; should "avoid repetitive fine manipulation with the upper extremities"; and has "moderate difficulties in social functioning and moderate difficulties in concentration, persistence and pace[.]" *Id*. The expert responded that this person could perform "jobs such as a silverware wrapper" or "garment presser." *Id*. at 46-47. The expert also stated that both jobs require "somewhat frequent use of the hands." *Id*. at 47. As a follow up, the ALJ asked the expert to assume that the hypothetical person also had "to avoid constant … fine manipulation." *Id*. The expert responded that the proposed jobs "are within that requirement." *Id*.

The Court finds that the ALJ's hypothetical question to the vocational expert "accurately describe[d] the claimant's physical impairments." *Butler*, 353 F.3d at 1005 (citation and quotation omitted). Plaintiff's suggestion that the ALJ should have included additional limitations on handling simply is not supported by the record, and Plaintiff points to no medical evidence establishing that she was limited to only occasional handling or fingering. Instead, as

17

was discussed above, substantial evidence exists in the record to support the ALJ's findings regarding Plaintiff's residual functional capabilities, including the ability to perform activities with her hands and wrists, and the hypothetical question that the ALJ posed to the vocational expert accurately reflected Plaintiff's limitations as determined by the ALJ. *Contra id.* at 1006 (reversing and remanding when "the ALJ's hypothetical question [to the vocational expert] failed to include [the claimant's] physical limitations regarding lifting, reaching and stooping"); *Simms v. Sullivan*, 877 F.2d 1047, 1053 (D.C. Cir. 1989) (reversing and remanding when "the ALJ did not advise the [vocational] expert of appellant's complaints of pain…; did not direct the expert to consider that appellant might be drowsy due to medication or, alternatively, that appellant might use a medical device that could limit the usefulness of his remaining arm; and failed to supply information about appellant's limited ability to hold and carry such objects as he could lift").

Plaintiff's other argument also fails for similar reasons. The ALJ's residual functional capacity assessment of Plaintiff's work-related limitations concluded that "she must avoid handling and repetitive fine manipulation with the upper extremities." AR at 15. As the Court explained above, the ALJ's findings were supported by substantial evidence in the record, and the ALJ therefore did not err by failing to include the additional physical and mental limitations that Plaintiff now seeks. *See Mickles v. Shalala*, 29 F.3d 918, 929 n.7 (4th Cir. 1994) (noting that "all of the exertional and non-exertional limitations which the ALJ found to exist … were included in the hypothetical" and concluding that this was sufficient); *Williams v. Shalala*, 997 F.2d 1494, 1500 (D.C. Cir. 1993) (concluding that the ALJ "did not err by failing to include in the hypotheticals [to the vocational expert] precise physical conditions whose existence rested solely on [the claimant's] subjective complaints"); *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 19 (D.D.C. 2009) ("[O]nly the impairments that the ALJ has found to be credible need to be

18

discussed in the hypotheticals."); *Smith v. Sullivan*, 733 F. Supp. 450, 452 (D.D.C. 1990) ("[T]he requirement ... is not that the ALJ recite all of the record evidence to the vocational expert but that the ALJ accurately describe the claimant's physical condition which is a finding of the ALJ…. Moreover, as a practical matter, a recitation of the claimant's various physical impairments is not going to be nearly as useful to the vocational expert as the ALJ's specific finding of what are the claimant's actual disabling limitations arising from the physical impairments."). Because the ALJ provided the vocational expert with accurate information regarding Plaintiff's mental and physical limitations, as properly determined by the ALJ in the residual functional capacity analysis, the ALJ's reliance on the expert's testimony was not erroneous.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal is denied, and Defendant's Motion for Judgment of Affirmance is granted. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: May 30, 2014                                            RUDOLPH CONTRERAS
                                                                                  United States District Judge